David E. Bower (SBN 119546)
MONTEVERDE & ASSOCIATES PC
600 Corporate Pointe, Suite 1170
Culver City, CA 90230
Tel: (213) 446-6652
Fax: (212) 202-7880
Email: dbower@monteverdelaw.com

*Counsel for Plaintiff Kevin Belanger*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULES STANISCI, Individually and on Behalf of All Others Similarly Situated<br><br>Plaintiff,<br><br>-against-<br><br>XILINX, INC., DENNIS SEGERS, VICTOR PENG, RAMAN CHITKARA, SAAR GILLAI, RONALD S. JANKOV, MARY LOUISE KRAKAUER, THOMAS H. LEE, JON A. OLSON, and ELIZABETH VANDERSLICE,<br><br>Defendants. | Case No.:  5:21-CV-1108<br><br>CLASS ACTION COMPLAINT<br><br>DEMAND FOR JURY TRIAL |

Plaintiff Jules Stanisci ("Plaintiff"), by and through his attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

## NATURE OF THE ACTION

1.     This is a stockholder class action brought by Plaintiff against Xilinx, Inc. ("Xilinx" or the "Company") and members of the Company's board of directors (collectively referred to as the "Board" or the "Individual Defendants" and, together with Xilinx, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a) respectively, United States Securities and Exchange Commission ("SEC")

Rule 14a-9, 17 C.F.R. § 240.14a-9, and for breaching their fiduciary duty of candor. Plaintiff's claims arise in connection with the proposed merger between the Company and Advanced Micro Devices, Inc. ("AMD").

2.      On October 26, 2020, Xilinx entered into an Agreement and Plan of Merger (the "Merger Agreement"), pursuant to which Thrones Merger Sub, Inc. ("Merger Sub"), a wholly owned subsidiary of AMD, will merge with and into Xilinx, with Xilinx continuing as the surviving corporation and becoming a wholly owned subsidiary of AMD (the "Proposed Transaction" or "merger").

3.      Under the terms of the Merger Agreement, each issued and outstanding share of Xilinx common stock (other than treasury shares and shares held by AMD or Merger Sub) will be converted into the right to receive 1.7234 shares of AMD common stock (the "Exchange Ratio" or "Merger Consideration"), with cash (without interest and less any applicable withholding taxes) being paid in lieu of any fractional shares of AMD common stock that Xilinx stockholders would otherwise be entitled to receive.

4.      On December 4, 2020, in order to convince Xilinx's public common stockholders to vote in favor of the merger, the Board authorized the filing of a materially incomplete and misleading Registration Statement on Form S-4 (the "Registration Statement") with the SEC. The Registration Statement contains material omissions and misleading statements concerning: (i) the financial projections for AMD and Xilinx, (ii) the valuation analyses performed by the Company's financial advisors, BofA Securities, Inc. ("BofA") and Morgan Stanley & Co. LLC ("Morgan Stanley", together with BofA referred to as the "Financial Advisors"); and (iii) regarding the Financial Advisors' compensation.

5.      The shareholder vote will be scheduled in the coming weeks, as the Proposed Transaction is expected to by the end of calendar year 2021 (the "Shareholder Vote"). It is imperative that the material information that has been omitted from the Registration Statement is disclosed to the Company's stockholders prior to the Shareholder Vote so they can properly determine whether to vote for or against the Proposed Transaction.

6.      For these reasons, and as set forth in detail herein, Plaintiff asserts claims against

Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act, Rule 14a-9, and Delaware State law. Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Xilinx's public common stockholders sufficiently in advance of the upcoming Shareholder Vote or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' misconduct.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over all claims asserted herein pursuant to Section 27 of the Exchange Act and 28 U.S.C. § 1331 because the claims asserted herein arise under Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9. This Court also has jurisdiction over the duty of candor claim pursuant to 28 U.S.C. § 1367.

9. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District, as to render the exercise of jurisdiction over each Defendant by this Court permissible under the traditional notions of fair play and substantial justice. "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state." *Sec. Inv'r Prot. Corp. v. Vigman*, 764 F.2d 1309, 1315 (9th Cir. 1985). "[S]o long as a defendant has minimum contacts with the United States, Section 27 of the Act confers personal jurisdiction over the defendant in any federal district court." *Id.* at 1316.

10. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because: (i) the Defendants can be found, are inhabitants of, or transact business in this District; (ii) the conduct at issue had an effect in this District; (iii) Xilinx maintains its principal executive offices in this District; and (iv) Defendants have received substantial compensation via Xilinx by doing business through, with and for Xilinx.

//

//

## CLASS ACTION ALLEGATIONS

11.     Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and the other public shareholders of Xilinx (the "Class"). Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any Defendant.

12.     This action is properly maintainable as a class action because:

      a.     The Class is so numerous that joinder of all members is impracticable. As of December 31, 2020, there were more than 245 million shares of Xilinx common stock outstanding, held by tens of thousands of individuals and entities scattered throughout the country. The actual number of public stockholders of Xilinx will be ascertained through discovery;

      b.     There are questions of law and fact that are common to the Class that predominate over any questions affecting only individual members, including the following:

         i.     whether Defendants have misrepresented or omitted material information concerning the Proposed Transaction in the Registration Statement, in violation of Section 14(a) of the Exchange Act;

        ii.     whether the Individual Defendants have violated Section 20(a) of the Exchange Act;

        iii.     whether the Individual Defendants have violated their fiduciary duties; and

        iv.     whether Plaintiff and other members of the Class will suffer irreparable harm if compelled to vote their shares regarding the Proposed Transaction based on the materially incomplete and misleading Registration Statement.

c.  Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class;

d.  Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

e.  The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for the party opposing the Class;

f.  Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole; and

g.  A class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

**PARTIES**

13.  Plaintiff was throughout all times relevant hereto, the owner of Xilinx common stock.

14.  Defendant Xilinx is a Delaware corporation with its principal executive offices located at 2100 Logic Drive San Jose, California 95124. The Company's common stock trades on the Nasdaq under the ticker symbol "XLNX."

15.  Defendant Dennis Segers joined the Board in October 2015 and was named Chairman of the Board in November 2015. Defendant Segers is also a member of the Board's Audit Committee.

16.  Defendant Victor Peng joined the Company in April 2008 and currently serves as Chief Executive Officer, a position he has held since January 2018. Defendant Peng joined the Board in October 2017.

17.  Defendant Raman Chitkara joined the Board in August 2018. Defendant Chitkara is an independent director and the Chair of the Audit Committee.

18.  Defendant Saar Gillai joined the Board in May 2016. Defendant Gillai is a member of the Audit and Nominating and Governance Committees.

CLASS ACTION COMPLAINT WITH DEMAND FOR JURY TRIAL

19.     Defendant Ronald S. Jankov joined the Board in May 2016. Defendant Jankov is the Chair of the Compensation Committee.

20.     Defendant Mary Louise Krakauer joined the Company's Board in October 2017. Defendant Krakauer is a member of the Compensation Committee.

21.     Defendant Thomas H. Lee joined the Board in May 2016. Defendant Lee is a member of the Nominating and Governance Committee.

22.     Defendant Jon A. Olson joined the Board in May 2020. Defendant Olson is an independent director.

23.     Defendant Elizabeth Vanderslice joined the Board in December 2000. Defendant Vanderslice is an independent director, Chair of the Nominating and Governance Committee, and a member of the Compensation Committee.

24.     The defendants identified in paragraphs 14 through 23 are collectively referred to herein as the "Board" or the "Individual Defendants," and together with Xilinx, the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A.  Background of the Proposed Transaction

25.     Xilinx is the inventor of the field-programmable gate array ("FPGA", a flexible general-purpose chip used in a wide range of equipment and computing systems) and Adaptive systems on a chip ("SoCs"), designed to deliver the most dynamic processor technology in the industry.

26.     AMD designs and markets an array of microprocessors for numerous computing applications, including Central Processing Units ("CPUs") and Graphics Processing Units ("GPUs") tailored to personal computers ("PCs"), game consoles, and data center environments. The majority of the AMD's revenue stems from its Computing and Graphics ("C&G") segment (representing approximately 70% of AMD's top-line), marked by its flagship Ryzen CPUs and Radeon GPUs.

27.     The proposed merger will combine AMD's processors with Xilinx FPGA's with the goal of providing a more powerful computing solution for customers. Analysts have stated that this is very similar to what Intel (NASDAQ:INTC) did in 2015 when it bought Altera, which at the time was the second-largest FPGA company behind Xilinx.

28.    On October 27, 2020, Xilinx authorized the announcement of the Proposed Transaction. The press release stated in relevant part as follows:

### AMD to Acquire Xilinx, Creating the Industry's High Performance Computing Leader

SILICON VALLEY, Calif., Oct. 27, 2020 (GLOBE NEWSWIRE) -- AMD (NASDAQ: AMD) and Xilinx (NASDAQ: XLNX) today announced they have entered into a definitive agreement for AMD to acquire Xilinx in an all-stock transaction valued at $35 billion. The combination will create the industry's leading high performance computing company, significantly expanding the breadth of AMD's product portfolio and customer set across diverse growth markets where Xilinx is an established leader. The transaction is expected to be immediately accretive to AMD margins, EPS and free cash flow generation and deliver industry-leading growth.

The acquisition brings together two industry leaders with complementary product portfolios and customers. AMD will offer the industry's strongest portfolio of high performance processor technologies, combining CPUs, GPUs, FPGAs, Adaptive SoCs and deep software expertise to enable leadership computing platforms for cloud, edge and end devices. Together, the combined company will capitalize on opportunities spanning some of the industry's most important growth segments from the data center to gaming, PCs, communications, automotive, industrial, aerospace and defense.

"Our acquisition of Xilinx marks the next leg in our journey to establish AMD as the industry's high performance computing leader and partner of choice for the largest and most important technology companies in the world," AMD President and CEO Dr. Lisa Su said. "This is truly a compelling combination that will create significant value for all stakeholders, including AMD and Xilinx shareholders who will benefit from the future growth and upside potential of the combined company. The Xilinx team is one of the strongest in the industry and we are thrilled to welcome them to the AMD family. By combining our world-class engineering teams and deep domain expertise, we will create an industry leader with the vision, talent and scale to define the future of high performance computing."

"We are excited to join the AMD family. Our shared cultures of innovation, excellence and collaboration make this an ideal combination. Together, we will lead the new era of high performance and adaptive computing," said Victor Peng, Xilinx president and CEO. "Our leading FPGAs, Adaptive SoCs, accelerator and SmartNIC solutions enable innovation from the cloud, to the edge and end devices. We empower our customers to deploy differentiated platforms to market faster, and with optimal efficiency and performance. Joining together with AMD will help accelerate growth in our data center business and enable us to pursue a broader customer base across more markets."

With a combined team of 13,000 talented engineers and over $2.7 billion of annual1 R&D investment, AMD will have additional talent and scale to deliver an even stronger set of products and domain-specific solutions.

### Additional Transaction Details

Under the terms of the agreement, Xilinx stockholders will receive a fixed exchange ratio of 1.7234 shares of AMD common stock for each share of Xilinx common stock

they hold at the closing of the transaction. Based on the exchange ratio, this represents approximately $143 per share of Xilinx common stock2. Post-closing, current AMD stockholders will own approximately 74 percent of the combined company on a fully diluted basis, while Xilinx stockholders will own approximately 26 percent. The transaction is intended to qualify as a tax-free reorganization for U.S. federal income tax purposes.

AMD expects to achieve operational efficiencies of approximately $300 million within 18 months of closing the transaction, primarily based on synergies in costs of goods sold, shared infrastructure and through streamlining common areas.

The transaction has been unanimously approved by the AMD and Xilinx Boards of Directors. The acquisition is subject to approval by AMD and Xilinx shareholders, certain regulatory approvals and other customary closing conditions. The transaction is currently expected to close by the end of calendar year 2021. Until close, the parties remain separate, independent companies.

**Management and Board of Directors**

Dr. Lisa Su will lead the combined company as CEO. Xilinx President and CEO, Victor Peng, will join AMD as president responsible for the Xilinx business and strategic growth initiatives, effective upon closing of the transaction. In addition, at least two Xilinx directors will join the AMD Board of Directors upon closing.

29.     The merger is principally orchestrated to benefit AMD stockholders. Indeed, adding Xilinx to AMD will significantly and immediately improve AMD's profit margins (especially since this is an all-stock transaction). Although Xilinx is a far smaller company, it maintains much higher gross profit margins and higher free cash flow generation than AMD. As shown below:



30.     For AMD stockholders, and in the semiconductor business generally, positive cash flow generation is especially important, as it directly feeds into the Company's ability to innovate and

CLASS ACTION COMPLAINT WITH DEMAND FOR JURY TRIAL

improve its products. In fact, AMD spent over $1.7 billion on research and development ("R&D") over the last year alone. As a result of the merger, Xilinx stockholders will be diluting their stake in Xilinx and will experience slower growth and thinner cash flow margins because of AMD's expensive requirement for R&D.

31.    Further, the Proposed Transaction itself, comes at less-than-ideal time (in the middle of a Pandemic) and carries significant risks and transaction costs. Including: (i) the risk that the combined company will not realize all of the anticipated strategic and other benefits of the merger, including the possibility that AMD's financial performance may not meet Xilinx's expectations and that the expected synergies may not be realized or will cost more to achieve than anticipated; (ii) the amount of time it could take to complete the merger; (iii) the provisions of the merger agreement that restrict the ability of Xilinx to solicit or negotiate alternative transactions and that such provisions and the potential requirement to pay AMD a termination fee of *$1.0 billion*; (v) the possibility that regulatory agencies may delay, object to or challenge the merger or may impose terms and conditions on their approvals that adversely affect the business or financial results of Xilinx, AMD or the combined company; and (vi) the fact that Xilinx stockholders will not be entitled to appraisal rights in connection with the merger

32.    Piggybacking off the uncertainty of Pandemic, the Proposed Transaction may inordinately compensate AMD stockholders and reward the Individual Defendants, all at the expense of the Company's common stockholders. Therefore, it is imperative that stockholders receive the material information (discussed in detail below) that Defendants have omitted from the Registration Statement, which is necessary for stockholders to properly exercise their corporate suffrage rights and in order to cast an informed vote on the Proposed Transaction.

**B.  The Registration Statement Omits Certain Material Information**

33.    On December 4, 2020, Defendants authorized the filing of a materially incomplete and misleading Registration Statement with the SEC. The Individual Defendants were obligated to carefully review the Registration Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Registration Statement misrepresents or omits material information concerning the

companies' financial projections, the Financial Advisors' financial analyses, and concerning the Financial Advisors' compensation. This information is necessary for Xilinx's stockholders to make an informed decision on how to vote their shares, in violation of Sections 14(a) and 20(a) of the Exchange Act, and SEC Rule 14a-9.

34.    *First*, the Registration Statement omits the earlier version of the five-year long-range plan ("LRP"), which was "prepared by Xilinx management and shared with AMD and the financial advisors for each of AMD and Xilinx." Reg. Stmt. 142. While the Registration Statement states that the variations are "immaterial", stockholders are entitled to make that determination themselves.  As Courts have consistently recognized, financial projections and forecasts are of special importance to shareholders because they contain unique insights into the value of the company unattainable elsewhere. By example, if the earlier projections for Xilinx for were to reveal a tremendous increase in cash flows in later years than was disclosed, stockholders would be more apt to vote against the merger, and inversely the same holds true, certainly a material outcome.

35.    Instead, stockholders are blind to the variations from the earlier projections—even though the earlier projections were relied upon by management and the Financial Advisors. This is not a game of poker where a player must conceal his unexposed cards, the object of a Registration Statement is to put all one's cards on the table face-up. In this case only some of the cards were exposed—the others were concealed—and so must be disclosed.

36.    *Second*, concerning the adjustments to AMD's Unlevered Cash Flow projections by Xilinx management, Defendants must disclose specifically why the adjustments were made and what specifically drove the reductions. Indeed, the Registration Statement omits the reasons for the drastic reductions by Xilinx management to AMD's Unlevered Free Cash Flows. Reg. Stmt. 143. Through the reduction of AMD's Unlevered Free Cash Flows, the *Relative Discounted Equity Value Analysis* performed by Morgan Stanley calculated an implied transaction Exchange Ratio fairer for Xilinx stockholders than if Morgan Stanley had utilized the projections created by AMD management. Management-created financial projections are clearly of greater importance to stockholders because they contain insight into a companies' financial performance that cannot be obtained elsewhere. Therefore it also of great importance to Xilinx stockholders why and how Xilinx management—an

outsider to AMD's internal financial performance—believed it necessary to slash AMD's Unlevered Free Cash Flows for use by the Financial Advisors in their fairness opinions.

37.     **Third,** Defendant must disclose a line-by-line reconciling of **all the adjustments** (not just to cash flows) to the management-created projections for AMD and Xilinx respectively, including the bases and assumptions for making their adjustments. Indeed, the Financial Advisors assumed that the management-created projections were "reasonably prepared on bases reflecting the best currently available estimates and good faith judgments", so unless AMD and Xilinx did not share in this good faith belief, there is no logical reason for the adjustments to each other's projections. At the very least, disclosure of the management-created projections alongside the adjustments, creates a misleading valuation picture for shareholders in determining whether the Exchange Ratio offered is fair consideration for their shares. A reconciling is necessary to conduct a fully informed stockholder vote.

38.     **Fourth,** the Registration Statement fails to provide Net Income projections for any of the projection sets, which has courts frequently consider to constitute material information. This is because Net Income is often considered one the most comparable metrics to metrics utilizing Generally Accepted Accounting Principles ("GAAP"). The inclusion of Net Income is therefore necessary for Xilinx stockholders to ensure that the Exchange Ratio is premised on projections that were reasonably prepared. The failure to disclose the Net Income also obfuscates the financial picture of both companies and provides a misleadingly incomplete representation of the projections tables and valuation analyses summarized in the Registration Statement. As Regulation S-K of the SEC explains, when disclosing revenue, it should be disclosed together with net income to prevent a misleading representation of corporate value:

> Although traditionally projections have been given for three financial items generally considered to be of primary importance to investors (revenues, net income (loss) and earnings (loss) per share), projection information need not necessarily be limited to these three items. However, management should take care to assure that the choice of items projected is not susceptible of misleading inferences through selective projection of only favorable items. Revenues, net income (loss) and earnings (loss) per share usually are presented together in order to avoid any misleading inferences that may arise when the individual items reflect contradictory trends.

17 C.F.R. § 229.10(b)(1). Here, the projections disclosed revenue but omitted net income.

39.     **Fifth**, the Registration Statement misleading states or omits material information

regarding the analyses performed by the Financial Advisors in rendering their fairness opinions.

40. With respect to Morgan Stanley's *Relative Discounted Cash Flow Analysis*, the Defendants must disclose: (1) all line items underlying the unlevered free cash flows for AMD and Xilinx; (2) the terminal values; (3) the individual inputs and assumptions underlying the terminal EBITDA multiples ranging from 11.0x to 15.0x and the discount rates ranging from 8.3% to 10.3%, in the case of AMD, and 6.8% to 7.8%, in the case of Xilinx.

41. With respect to Morgan Stanley's *Relative Discounted Equity Value Analysis*, Defendants must disclose: (1) all line items underlying the earnings per share ("EPS") of AMD and Xilinx; and (2) the individual inputs and assumptions underlying the P/E multiples and the discount rate of 9.3%, in the case of AMD, and 6.8%, in the case of Xilinx.

42. With respect to Morgan Stanley's *Relative Public Trading Multiples Analysis*, Defendants must disclose the inputs and assumptions of the companies observed by Morgan Stanley in its analysis.

43. With respect to Morgan Stanley's *Precedent Premia Analysis*, Defendants must disclose each transaction and the individual premiums paid therein.

44. With respect to Morgan *Stanley's Relative Equity Research Analysts' Future Price Targets*, Defendants must disclose: (1) the individual price targets observed by Morgan Stanley in its analysis; and (2) the sources thereof.

45. With respect to BofA's *Selected Publicly Traded Companies Analysis* of Xilinx and AMD, and BofA's *Selected Precedent Transactions Analysis*, Defendants must disclose the inputs and assumptions of the companies and transactions observed by BofA.

46. Defendants must disclose the following concerning BofA's *Discounted Cash Flow Analysis* of Xilinx and AMD: (1) all line items underlying the unlevered cash flows; (2) the terminal values; and (3) the individual inputs and assumptions underlying the perpetuity growth rates of 2.75% to 3.25% and of 3.50% to 4.00%, and discount rates ranging from 6.5% to 8.5% and from 8.50% to 10.50%.

47. With respect to BofA's analysis of equity research analyst price targets for Xilinx common stock and AMD common stock, Defendants must disclose: (1) the individual price targets

observed by BofA in its analysis; and (2) the sources thereof.

48.     As one highly respected professor explained in one of the most thorough law review articles regarding the fundamental flaws of fairness opinions, in a financial analysis a banker takes management's forecasts, and then makes several key choices "each of which can significantly affect the final valuation." Steven M. Davidoff, *Fairness Opinions*, 55 Am. U.L. Rev. 1557, 1576 (2006). Such choices include "the appropriate discount rate, and the terminal value…" *Id.* As Professor Davidoff explains:

> There is substantial leeway to determine each of these, and any change can markedly affect the discounted cash flow value. For example, a change in the discount rate by one percent on a stream of cash flows in the billions of dollars can change the discounted cash flow value by tens if not hundreds of millions of dollars….This issue arises not only with a discounted cash flow analysis, but with each of the other valuation techniques. This dazzling variability makes it difficult to rely, compare, or analyze the valuations underlying a fairness opinion unless full disclosure is made of the various inputs in the valuation process, the weight assigned for each, and the rationale underlying these choices. The substantial discretion and lack of guidelines and standards also makes the process vulnerable to manipulation to arrive at the "right" answer for fairness. This raises a further dilemma in light of the conflicted nature of the investment banks who often provide these opinions.

*Id.* at 1577-78. Therefore, in order for stockholders to determine how to vote they need access to the above information, and the omission of these metrics makes each financial analysis identified inherently misleading.

49.     **Sixth**, the Registration Statement further fails to disclose the circumstances under which Xilinx will pay Morgan Stanley an additional $40 million, including the details of the calculation structure underlying the basis of the fee.

50.     Disclosure of a financial advisor's compensation to stockholders is necessary due to their central role in the evaluation, exploration, selection, and implementation of strategic alternatives and the rendering of any fairness opinions. Disclosure of a financial advisor's potential conflicts of interest may inform shareholders on how much weight to place on that analysis. Fairness opinions are fundamental to the M&A process and is ultimately what stockholders rely upon in their determination to vote for or against a transaction. Unfortunately, fairness opinions are also vulnerable to manipulation, which is why it is of the utmost important that stockholders have analyses available— such as those omitted here—to determine whether those metrics are reasonable, or whether they were

unreasonably selected in order to obtain a finding of fairness. In valuing transactions such as these, it becomes all the more critical.

51.     In sum, the omission of the above-referenced information renders the Registration Statement materially incomplete and misleading, in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the Shareholder Vote, Plaintiff will be unable to make an informed decision concerning whether to vote his shares, and he is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## COUNT I

### (Against All Defendants for Violation of Section 14(a) of the Exchange Act)

52.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

53.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any Registration Statement or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

54.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that Registration Statement communications shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

55.     The omission of information from a Registration Statement will violate Section 14(a) and Rule 14a-9 if other SEC regulations specifically require disclosure of the omitted information.

56.     Defendants have issued the Registration Statement with the intention of soliciting the Company's common stockholders' support for the Proposed Transaction. Each of the Individual Defendants reviewed and authorized the dissemination of the Registration Statement, which fails to

provide critical information regarding the valuation analyses performed by the Financial Advisors in support of their fairness opinions.

57.    In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to the Company's stockholders although they could have done so without extraordinary effort.

58.    The Individual Defendants knew or were negligent in not knowing that the Registration Statement is materially misleading and omits material facts that are necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon most if not all of the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction; indeed, the Registration Statement states that the Financial Advisors reviewed and discussed their financial analyses with the Board, and further states that the Board considered the financial analyses provided by the Financial Advisors, as well as the fairness opinions and the assumptions made and matters considered in connection therewith. Further, the Individual Defendants were privy to and had knowledge of the projections for the Company and the details surrounding the process leading up to the signing of the Merger Agreement. The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Registration Statement, rendering the sections of the Registration Statement identified above to be materially incomplete and misleading. Indeed, the Individual Defendants were required to, separately, review the Financial Advisors' analyses in connection with their receipt of the fairness opinions, question the Financial Advisors as to their derivation of fairness, and be particularly attentive to the procedures followed in preparing the Registration Statement and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

59.    The Individual Defendants were, at the very least, negligent in preparing and reviewing the Registration Statement. The preparation of a Registration Statement by corporate insiders

containing materially false or misleading statements or omitting a material fact constitutes negligence. The Individual Defendants were negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and preparation and review of the Company's financial projections.

60.    Xilinx is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Registration Statement.

61.    The misrepresentations and omissions in the Registration Statement are material to Plaintiff and the Class, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the Shareholder Vote. Plaintiff and the Class are entitled to injunctive relief and/or damages.

## COUNT II

**(Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act)**

62.    Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

63.    The Individual Defendants acted as controlling persons of Xilinx within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Xilinx, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

64.    Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

65.    In particular, each of the Individual Defendants had direct and supervisory involvement

in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Registration Statement contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

66.     In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

67.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

68.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

69.     The misrepresentations and omissions in the Registration Statement are material to Plaintiff and the Class, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the Shareholder Vote. Plaintiff and the Class are entitled to injunctive relief and/or damages.

## COUNT III

### (Against the Individual Defendants for Breach of Their Fiduciary Duty of Candor/Disclosure)

70.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

71.     By virtue of their role as directors and/or officers of the Company, the Individual Defendants directly owed Plaintiff a fiduciary duty of candor/disclosure, which required them to

disclose fully and fairly all material information within their control when they sought shareholder action, and to ensure that the Registration Statement did not omit any material information or contain any materially misleading statements.

72.    As alleged herein, the Individual Defendants breached their duty of candor/disclosure by approving and/or causing the materially deficient Registration Statement to be disseminated to Plaintiff and the Company's other public stockholders.

73.    The misrepresentations and omissions in the Registration Statement are material, and Plaintiff will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the Shareholder Vote. Where a shareholder has been denied one of the most critical rights he or she possesses—the right to a fully informed vote—the harm suffered is an individual and irreparable harm.

74.    The misrepresentations and omissions in the Registration Statement are material to Plaintiff and the Class, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the Shareholder Vote. Plaintiff and the Class are entitled to injunctive relief and/or damages.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.    Declaring that this action is properly maintainable as a Class Action and certifying Plaintiff as Class Representative and his counsel as Class Counsel;

B.    Preliminarily enjoining Defendants and all persons acting in concert with them from proceeding with the Shareholder Vote or consummating the Proposed Transaction, unless and until the Company discloses the material information discussed above;

C.    Directing the Defendants to account to Plaintiff for all damages sustained as a result of their wrongdoing;

D.    Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.    Granting such other and further relief as this Court may deem just and proper.

CLASS ACTION COMPLAINT WITH DEMAND FOR JURY TRIAL

1

## JURY DEMAND

2      Plaintiff demands a trial by jury on all issues so triable.

3

4   DATED: February 13, 2021                Respectfully submitted,

5                                           **MONTEVERDE & ASSOCIATES PC**

6                                           */s/ David E. Bower*
                                            David E. Bower (SBN 119546)
7                                           600 Corporate Pointe, Suite 1170
                                            Culver City, CA 90230
8                                           Tel: (310) 446-6652
                                            Fax: (212) 202-7880
9                                           dbower@monteverdelaw.com

10                                          **OF COUNSEL**

11                                          **MONTEVERDE & ASSOCIATES PC**
                                            Juan E. Monteverde
12                                          The Empire State Building
                                            350 Fifth Avenue, Suite 4405
13                                          New York, New York 10118
                                            Tel:  212-971-1341
14                                          Fax:  212-202-7880
                                            jmonteverde@monteverdelaw.com
15
                                            *Counsel for Plaintiff*
16

17

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT WITH DEMAND FOR JURY TRIAL